# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHERYL ZONDLO, | : | No. 3:16cv936 |
| Plaintiff | : | |
| v. | : | (Judge Munley) |
| | : | |
| ALLIED INTERSTATE, LLC, | : | |
| Defendant | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## <u>MEMORANDUM</u>

Pending before the court are cross-motions for summary judgment filed by Plaintiff Cheryl Zondlo and Defendant Allied Interstate, LLC, in this Telephone Consumer Protection Act of 1991, 47 U.S.C. § 277, violation case. The motions have been fully briefed and are ripe for disposition.

**Background**

Between May 2005 and June 2013, Plaintiff Cheryl Zondlo opened several retail store credit cards including one at Gap, one at American Eagle Outfitters and one at JCPenney. (Doc. 27, Def. Stmt. of Mat. Facts (hereinafter "SOF") ¶ 2).[1] Gap, JCPenney and American Eagle Outfitters each issue their credit cards through Synchrony Bank. (<u>Id.</u> ¶ 1). This lawsuit involves Defendant Allied

---

[1]For this brief factual background section, we will cite primarily to the defendant's statement of material facts as to which no genuine issue remains to be tried. The plaintiff generally agrees with these background facts. Where more context is necessary, we will cite to the plaintiff's statement of material facts.

Interstate, LLC, a third-party debt collector, telephoning plaintiff regarding these accounts.

### *Gap Account*

After experiencing financial difficulties, plaintiff fell behind on her credit card payments. (Id. ¶ 7). On September 15, 2015, Synchrony Bank placed plaintiff's Gap account with Defendant Allied Interstate, LLC (hereinafter "Allied" or "Defendant") for collections. (Id. ¶ 16).

Soon thereafter, defendant began making calls to the plaintiff on the number she had provided Synchrony Bank, that is, her landline telephone number (hereinafter "9301 Landline Number")(Id. ¶ 14). Defendant's calls involved an attempt to collect the outstanding debt on her Gap account. (Id. ¶¶ 14, 17).

### *American Eagle Outfitters Account/ Revocation of Consent*

Plaintiff also fell behind on her American Eagle Outfitters Account.  On October 7, 2015, plaintiff telephoned a number associated with her American Eagle Outfitters account and spoke to an agent at Synchrony Bank. (Id. ¶ 27). Initially, plaintiff asked the agent about the balance owed on her American Eagle Outfitters account and the application of interest on that account. (Id. ¶ 30).

During the phone call, plaintiff revoked consent for Synchrony Bank to telephone her regarding her debt. Specifically, she stated to the Synchrony Bank

agent: "You no longer have permission to call me or my spouse on any phone number regarding any accounts." (Doc. 37, Pl.'s SOF ¶ 16).

In response, Synchrony Bank placed a notation on plaintiff's American Eagle Outfitters account that plaintiff should not be contacted by cell phone or automated dialer.[2] (Doc. 27, Def.'s SOF ¶ 38).  Synchrony did not place such a notation on plaintiff's Gap or JCPenney account. (Id. ¶ 39).

As noted, plaintiff called and spoke to an agent of Synchrony Bank, not the bank's debt collector, Defendant Allied.   Synchrony did not inform Defendant Allied that plaintiff revoked consent to be telephoned. Defendant, thus, continued to call plaintiff on her 9301 Landline Number regarding her Gap account. (Id. ¶¶ 40, 43).

### JCPenney Account

On October 15, 2015, approximately a week after plaintiff revoked consent to telephone calls, Synchrony Bank placed plaintiff's JCPenney account with defendant for collection. (Id. ¶ 41).  Defendant soon thereafter began calling plaintiff's cell phone number (hereinafter "3231 Cell Number").[3] (Id. ¶ 44).

_____

[2] The parties have stipulated that prior to this phone call, Synchrony Bank had consent to call both plaintiff's 3231 Cell Number as well as her 9301 Landline Number. (Doc. 34, Stipulation of Facts ¶ 13).

[3] According to Synchrony Bank's business records, plaintiff provided the 9301 Landline Number to Synchrony Bank in connection with her JCPenney account in

Plaintiff saw a "missed call" on her cell phone from an unknown number on October 19, 2015. Plaintiff called the number back and confirmed that Defendant Allied had called her as a third-party debt collector regarding her JCPenney account. (Id.) Plaintiff did not ask Allied to stop calling her during this phone call. (Id. ¶ 46).

### *Changing landline service into a cellular service*

A month later, on November 18, 2015, plaintiff "ported" her 9301 Landline Number from a landline service to a cellular service. (Doc. 35, Pl.'s Ans. To Def.'s SOF ¶ 72). Through the "porting", calls to plaintiff's landline number now came through a wireless network. Defendant continued to call plaintiff on both her 9301 Landline Number and her 3231 Cell Number until January 24, 2016, when plaintiff's accounts were sold to a third-party debt buyer. (Doc. 27, Def.'s SOF ¶ 70).

### *Number of calls plaintiff received*

The parties have stipulated that after plaintiff revoked consent to call her, the defendant placed a total of sixty-six (66) calls to her on the 3231 Cell Number. (Doc. 34, Stipulations of Fact ¶ 1). After plaintiff ported her 9301

---

May 2005. In January 2014, plaintiff updated her JCPenney account and provided the 3231 Cell Number to Synchrony Bank. (Doc. 27, Def.'s SOF ¶ 13).

Landline Number into a wireless number, the defendant placed 246 calls to plaintiff's 9301 Landline Number. (Id. ¶ 2).[4]

Thus, at issue, in this case is whether plaintiff's revocation of consent to telephone calls, made while calling about her American Eagle account, also applies to her Gap and JCPenney accounts. Also the issues in this case involve whether plaintiff's revocation of consent to Synchrony Bank applies to the third-party debt collector Synchrony hired, that is, Defendant Allied. Next, the parties argue over whether defendant acted properly in continuing to call plaintiff's landline number after it had been changed into a cell phone number.

Based upon these facts, plaintiff initiated this action by filing a complaint in the Court of Common Pleas for Luzerne County on April 19, 2016, alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227. The defendant removed the matter to this court on May 19, 2016. (Doc. 1). At the close of discovery, the defendant moved for summary judgment. Plaintiff, in response, filed a cross-motion for summary judgment, bringing the case to its present posture.

**Jurisdiction**

---

[4] The parties also stipulate that the defendant placed 77 phone calls to plaintiff on her 3231 Cell Number using "Quallbar software." (Doc. 34, Stipulations of Fact ¶ 3). The parties do not mention this software or the calls received from this software anywhere else in their filings.

The court has federal question jurisdiction over this Telephone Consumer Protection Act of 1991, 47 U.S.C. § 277, violation case. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."); 28 U.S.C. §§ 1343(a)(3), (4) (granting district court jurisdiction over civil actions brought to redress deprivations of constitutional or statutory rights by way of damages or equitable relief).

**Legal Standard**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(C)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. Int'l Raw

Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by establishing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories demonstrating that there is a genuine issue for trial. Id. at 324.

**Discussion**

Plaintiff has sued the defendant alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (hereinafter "TCPA"). Pursuant to the TCPA, it is unlawful for any person "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47

U.S.C. § 277(b)(1)(A). The parties here agree that the defendant is a "person" under the meaning of the statute. The parties further agree that after October 7, 2015, defendant placed 66 calls to her 3231 Cell Number using aQrate software. After November 18, 2015, the defendant, using aQrate software, placed 246 calls to plaintiff's 9301 Landline Number, which at this point plaintiff had ported to a cellular network. None of these calls were made for emergency purposes.

The parties have filed cross-motions for summary judgment on largely stipulated facts.[5] The issues that remain in dispute are: (1) whether the plaintiff has standing to pursue her TCPA claim; (2) whether the defendant used an automatic telephone dialing system when it called the plaintiff; (3) whether the defendant had prior express consent to call plaintiff after October 7, 2015; and (4) whether the defendant was entitled to continue placing calls to plaintiff's 9301 Landline Number after November 18, 2015. We will address these issues *seriatim*.

## I. Whether Plaintiff  Has Standing to Pursue Her Claim

At the outset, defendant argues that plaintiff does not have standing to pursue this lawsuit. To demonstrate that she has standing, plaintiff must establish

_____

[5] Plaintiff's brief supporting her motion for summary judgment is entitled "Brief in Support of Plaintiff's Cross-Motion for Summary Judgment and in Opposition to Defendant's Motion to Summary Judgment." (Doc. 38). It appears as though the issues brought up in plaintiff's motion are identical to the issues brought up in the defendant's motion. Thus, we will address the cross-motions together.

that she suffered an injury in fact connected with receiving calls from Allied.

Defendant argues that she has not met this burden. The defendant asserts that in order to suffer injury under the TCPA, the phone calls must have been unwanted. Here, according to the defendant, plaintiff clearly wanted to receive these phone calls as she, while represented by counsel and receiving legal advice on her financial issues, was in the process of concocting a TCPA lawsuit. As such, the defendant argues that the plaintiff's interests in pursuing this lawsuit are not "within the zone of interests intended to be protected by the statute;" rather, she is simply looking for a way out of financial trouble. (Doc. 27, Def.'s Motion for Sum. Judg. at 21).

"Article III of the Constitution limits the judicial power of the United States to the resolution of Cases and Controversies, and Article III standing enforces the Constitution's case-or-controversy requirement." Hein v. Freedom From Religion Found., Inc., 551 U.S. 587, 597–98 (2007). "One of the controlling elements in the definition of a case or controversy under Article III is standing." Id. at 598. The law is clear that one of the elements necessary for establishing "the irreducible constitutional minimum of standing" under Article III is that the plaintiff "must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not

conjectural or hypothetical." <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560–61 (1992).

In response to the defendant's standing argument, plaintiff points to several cases, though none binding, in which courts have held that unsolicited contact in itself in the form of phone calls qualifies as a form of concrete harm. (See Doc. 38, Pl.'s Br. in Supp. of Pl.'s Cross Mot. for Sum. Judg. at 34-36 (citing <u>Van Patten v. Vertical Fitness Grp., LLC</u>, 847 F.3d 1037, 1043 (9th Cir. 2017); <u>Krakauer v. Dish Network L.L.C.</u>, 168 F. Supp. 3d 843, 845 (M.D. N.C. 2016); <u>Aranda v. Carribean Cruise Line Inc.</u>, 202 F. Supp. 3d 850, 858 (N.C. Ill. 2016); <u>Booth v. Appstack, Inc.</u>, 2016 WL 3030256, at *5 (W.D. Wash. May 25, 2016), order clarified, 2016 WL 3620798 (W.D. Wash. June 28, 2016); <u>Mey v. Got Warranty, Inc.</u>, 193 F. Supp. 3d 641, 644-45 (N.D. W.Va. 2016); <u>LaVinge v. First Cmty. Bancshares, Inc.</u>, 215 F. Supp. 3d 1138, 1146 (D.N.M. 2016); <u>Caudill v. Wells Fargo Home Mortg., Inc.</u>, 2016 WL 3820195, at *3 (E.D. Ky. July 11, 2016))). Plaintiff further argues that we should not afford weight to the fact that she was represented by counsel and was advised with respect to the events that created the alleged TCPA violation because "there is nothing improper about a consumer obtaining legal services to determine her rights." (Doc. 38, Pl.'s Br. in Supp. of Pl.'s Cross Mot. for Sum. Judg. at 31).

After a careful review, we agree with the plaintiff. Congress passed the TCPA to protect consumers, like the plaintiff, from unwanted telephone calls. See Gager v. Dell Financial Services, LLC, 727 F.3d 265, 268 (3d Cir. 2013)(citing Mims v. Aarow Fin. Servs., LLC, 565 U.S. 368, 372 (2012)). We have found nothing in the record to suggest that plaintiff "wanted" to receive over 300 phone calls from the defendant. In fact, the evidence appears to be to the contrary, as the parties agree that plaintiff spoke with a representative at Synchrony Bank on October 7, 2015, and expressed her desire that she not be called on any of her numbers moving forward.

We also find it insignificant that counsel represented plaintiff during this period of time. Plaintiff claims that she retained counsel in September of 2015 to discuss filing for bankruptcy. (Doc. 37-4, Affidavit of Zondlo ¶ 18). Whether or not plaintiff's legal consultation led to plaintiff's counsel providing her with information about the TCPA and suggesting that she may be able to recover money from such a suit, is irrelevant.  We have found no case law, nor has the defendant provided us with any, which requires that plaintiff be ignorant of her legal rights throughout the process of filing a lawsuit.

Moreover, the case law that the defendant primarily relies on in asserting this argument concerning plaintiff's motives, Stoops v. Wells Fargo Bank, N.A., 197 F. Supp. 3d 782, 803-804 *13 (W.D. Pa. 2016), presents facts that are

entirely different from those we have before us today. In <u>Stoops</u>, the court found that the plaintiff did not have standing to pursue her TCPA claim because she was a "professional plaintiff" who admitted that she purchases cell phones with the hope of receiving calls from creditors for the sole purpose of collecting statutory damages. <u>Id.</u> at *15. Here, no evidence suggests that plaintiff initiated these phone calls or did anything to increase the number of calls she received. As noted above, if anything, the record reflects that plaintiff affirmatively took action to lessen the number of phone calls she received, as she asked Synchrony Bank to stop calling her.

As such, we find that because the plaintiff alleges that she received unwanted phone calls from the defendant, in violation of the TCPA, plaintiff has suffered an injury and does have standing to pursue this claim.

**II. Whether Allied Used an Automated System to Call Plaintiff**

Next, the parties dispute whether the dialing system used by the defendant constituted an automatic telephone dialing system (hereinafter "ATDS"). One of the requirements under the TCPA is that in order for there to be a violation, the caller must have used either an ATDS or an artificial or prerecorded voice. 47 U.S.C. § 277(b)(1)(A). Plaintiff argues that we should not consider this dispute, and that instead, the defendants should be collaterally estopped from "relitigating" the issue, as Allied's aQrate system was determined to be an ATDS

12

system in an opinion by U.S. District Court Judge William J. Nealon in 2015. <u>See</u>

<u>Morse v. Allied Interstate, LLC</u>, 65 F. Supp. 3d 407 (M.D. Pa. 2014).

In situations where a plaintiff seeks to foreclose the defendant from

litigating an issue that the defendant has previously litigated unsuccessfully in an

action with another party, he or she may rely on the doctrine of offensive

collateral estoppel. <u>Parklane Hoisery Co., Inc. v. Shore</u>, 439 U.S. 322 (1979).

Because Judge Nealon granted summary judgment in 2015 on the exact

question of whether aQrate constituted an ATDS, plaintiff argues that it would be

a waste of judicial resources to relitigate. The parties agree that there have not

been any "material" or "major" changes made to the dialing software since

<u>Morse</u>. They have also agreed that they will use the deposition testimony that

was obtained in <u>Morse</u> in this case. (Doc. 38, Pl.'s Br. in Supp. of Pl.'s Cross Mot.

for Sum. Judg. at 17).

Trial courts have broad discretion to determine when offensive collateral

estoppel should be applied. <u>Parklane Hoisery</u>, 439 U.S. at 331. Offensive

collateral estoppel may be appropriate whenever: "(1) the identical issue was

previously adjudicated; (2) the issue was actually litigated; (3) the previous

determination was necessary to the decision; and (4) the party being precluded

from litigating the issue was fully represented in the prior action." <u>Jean Alexander</u>

<u>Cosmetics, Inc. v. L'Oreal USA Inc.</u>, 458 F.3d 244, 249 (3d Cir. 2006). Most

importantly, courts should consider whether the party being precluded "had a full and fair opportunity to litigate the issue in question in the prior action, <u>Sebrowski v. Pittsburgh Press Co.</u>, 188 F.3d 163, 169 (3d Cir. 1999).

In response, the defendant argues that offensive collateral estoppel is not appropriate here for two reasons. First, it directs our attention to <u>Nieto v. Allied Interstate, Inc.</u>, Civ. No. CCB-13-4395, 2014 WL 4980376 (Oct. 3, 2014), another case in which Allied was sued for violating the TCPA. In <u>Nieto</u>, the court granted Allied's motion for summary judgment, finding that: (1) Allied did not use an ATDS to call the plaintiff; and (2) that the number to which Allied made calls was not assigned to a cellular telephone service. The defendant argues that because the judgment in <u>Nieto</u> is inconsistent with the judgment in <u>Morse</u>, we should not employ collateral estoppel. Second, the defendant argues that because <u>Morse</u> was settled after the summary judgment decision, the defendant did not truly have an opportunity to fully litigate the ATDS issue. More specifically, the defendant claims that had the parties in <u>Morse</u> not settled, the defendant would have appealed the court's order on the basis of law where it was concluded that the system used by Allied was an ATDS.

After a careful review, we agree with the plaintiff that collateral estoppel is appropriate on the issue of whether Allied's aQrate system is an ATDS. A review of the <u>Nieto</u> case reveals that the outcome is not truly inconsistent with the

outcome in <u>Morse</u>. Although the two courts came to different conclusions as to whether Allied used an ATDS, the facts in <u>Nieto</u> and <u>Morse</u> are significantly different. First and foremost, there is no indication in the <u>Nieto</u> decision, which was issued prior to the <u>Morse</u> decision, that the court was considering aQrate, the system that was before the court in <u>Morse</u> and is also before us today. It is clear from the record that Allied uses at least one other dialing system, namely "Quallbar" software, (Doc. 34, Stipulations of Fact, ¶ 3), thus it would be purely speculative to assume that the <u>Nieto</u> court determined that aQrate was an ATDS.

Further, the court in <u>Nieto</u> found that no genuine dispute existed as to whether Allied used an ATDS because the *pro se* plaintiff failed to present evidence to the contrary. The defendant presented an affidavit from Allied's Senior Vice President of Telephony, who declared that Allied did not use an ATDS. Absent evidence presented by the plaintiff calling Allied's affidavit into question,[6] the court found that the plaintiff could not prevail. We find that the <u>Nieto</u> case was not an analysis of the system used by Allied, rather it was the court's ruling on a failure by the plaintiff to prosecute his case.

---

[6] Plaintiff relied on what the court considered a "conclusory allegation" and "mere speculation" to support his argument that Allied used an ATDS. He simply suggested that in order for Allied to be competitive in the debt collection industry and marketplace, Allied would have had to use an ATDS. <u>Nieto</u>, 2014 WL 4980376, at *3.

Conversely, the court in Morse did conduct a detailed analysis on the identical issue of whether the aQrate system used by Allied constituted an ATDS. The issue was critical in the granting of summary judgment for the plaintiff, as it was the primary issue of contention between the parties. We also have no doubt that Allied would have had every incentive to vigorously defend itself from summary judgment, as the damages in Morse were in excess of the damages before us today.

Allied does not dispute that it was fully represented during Morse, and, as previously mentioned, has even agreed to use the deposition testimony from Morse in the instant case, as its aQrate system has not been materially altered since the Morse decision. Thus it appears as though the defendant is asking us to review the exact same evidence that was presented before Judge Nealon in 2014, but come to the conclusion of its liking. This is precisely what the doctrine of collateral estoppel is designed to prevent.

Lastly, Allied claims that it would have appealed Judge Nealon's ruling had the case not settled. For this reason, Allied claims that the issue was not fully and fairly litigated. This argument is also unpersuasive and will not be afforded weight. While that very well may have been Allied's intention, Allied did in fact settle, closing the case and waiving its right to appeal. See Morse v. Allied Interstate, LLC, 3:13-CV-00625, Docs. 49, 50.

As such, we find that Allied had a full and fair *opportunity* in <u>Morse</u> to litigate the issue of whether its aQrate system is an ATDS. <u>See</u> <u>Sebrowski</u>, 188 F.3d at 169 (emphasis added). Judge Nealon's determination that the system is an ATDS was a final and valid judgment. The law of collateral estoppel leads inescapably to the conclusion that the defendant should be collaterally estopped from relitigating this question. Summary judgment will be granted in favor of the plaintiff on this issue.

**III. Whether Allied Had Consent to Call Plaintiff After October 7, 2015**

The parties agree that Synchrony Bank initially had consent to call plaintiff on both her 9301 Landline Number and 3231 Cell Number regarding her Gap, JCPenney, and American Eagle Outfitters credit cards. This consent stemmed from plaintiff providing her phone number voluntarily to Synchrony Bank when she opened the accounts. The parties further agree that by virtue of plaintiff giving consent to Synchrony Bank, she also implicitly gave consent to Allied to call her regarding her Gap and JCPenney accounts, the accounts that were placed for collections.[7] The parties dispute, however, whether Allied had consent to call the plaintiff after October 7, 2015.

---

[7] The law provides that prior consent originating with a creditor is transferred to a third party debt collector because "[c]alls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call." <u>In re Rules and Regulations Interpreting Tel. Consumer Prot. Act of 1991, Request of</u>

Plaintiff called Synchrony Bank on October 7, 2015, and revoked consent for them to call her on any number regarding any account. The defendant argues that plaintiff placed this call to a telephone number associated solely with her American Eagle Outfitters account, and reached an agent from Synchrony Bank. During the phone call, the Synchrony Bank agent reviewed details about plaintiff's American Eagle Outfitters account with her, including the account balance, the application of interest, and methods of contacting her. Plaintiff argues that from the moment she revoked consent with the Synchrony Bank agent, neither Synchrony Bank nor the defendant had permission to call her. Defendant argues that while Synchrony Bank may not have had permission to call her, Allied retained plaintiff's consent. The first issue, therefore, is whether revocation of consent with a creditor transfers to a third party debt collector.

While the Third Circuit has not addressed this issue directly, the court has considered cases dealing with the revocation of consent with respect to the TCPA generally. We will look, therefore, to <u>Gager v. Dell Financial Services, LLC</u>, 727 F.3d 265 (3d Cir. 2013), for guidance. In <u>Gager</u>, the court held that although the TCPA does not contain any language expressly allowing consumers the right to revoke their prior express consent, such allowance is "consistent with the basic common law principle that consent is revocable." <u>Id.</u> at 270. Also consistent

<u>ACA, Int'l for Clarification & Declaratory Ruling</u>, 23 FCC Rcd. 559, 565 (Dec. 28, 2007).

with common law principles on revoking consent, the Federal Communications Commission has weighed in that: "[c]onsumers have a right to revoke consent, using any reasonable method including orally or in writing." In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 F.C.C. Rcd. 7961, 7996-97, ¶ 64 (July 10, 2015).

After a careful review of the materials filed by each of the parties, we find that as a general principle, it is reasonable for a plaintiff to revoke consent with a third party debt collector by revoking consent with the original creditor. Here, the defendant dedicates two pages in its brief citing to case law that stands for the proposition that prior consent originating with a creditor is transferred to a third party debt collector. (See Doc. 27, Def.'s Br. in Supp. at 8, 9). Yet, the defendant vigorously argues that the revocation of that consent should not be transferred. While this argument places the defendant in the best possible position—the defendant doesn't need plaintiff's consent to call her over three hundred (300) times because that consent comes from Synchrony Bank; but, if plaintiff wants to revoke her consent, she needs to contact Allied directly, whom she may have never had any interaction with—it is outwardly unfair to the plaintiff. In the absence of a compelling argument to the contrary, we find that just as prior consent originating with a creditor is transferred to a third party debt collector,

revocation originating with a creditor should also be transferred to a third party debt collector.

Thus it would be crystal clear, for example, that had plaintiff called Synchrony Bank and revoked consent to call her regarding her JCPenney account, that revocation would be transferred to Allied, who has her JCPenney account for collections. That, however, is not the situation we have before us, which brings us to the defendant's second argument. As noted above, the defendant alleges that plaintiff was calling Synchrony Bank regarding her American Eagle Outfitters account when she revoked consent, an account that was never placed with Allied for collections. Defendant argues that it had no way of knowing that plaintiff was attempting to revoke consent regarding her Gap and JCPenney accounts,[8] because at the time it had no connection with plaintiff's American Eagle Outfitters account.

At this juncture, we find that the question of whether it would be reasonable for the plaintiff to revoke consent with Allied by revoking consent on an account at Synchrony Bank that was never placed with Allied for collections is a question for a factfinder. As we have before us cross-motions for summary judgment, the parties have the burden to bring information in support of their positions to

---

[8] Defendant alleges that Synchrony Bank did not contact the defendant and advise them of plaintiff's revocation. Plaintiff does not necessarily dispute this, but argues that whether Synchrony Bank advised the defendant or not is irrelevant.

establish that summary judgment is in fact appropriate. We find that the parties have not met this burden, as a review of the record reveals that information that may be critical to this determination is noticeably absent. We know very little about how plaintiff's accounts are set up with Synchrony Bank; whether there is a connection between accounts when an account holder has more than one account; and the process by which Synchrony Bank communicates with Allied regarding accounts. Because, looking solely at the record as it stands, a factfinder could reasonably find for either the plaintiff or the defendant, summary judgment is not appropriate.

We find that the facts in this case need to be more thoroughly developed. For these reasons, we will deny both plaintiff and defendant's motions for summary judgment on this issue.

## IV. Whether Defendant Was Entitled to Continue Placing Calls to Plaintiff's 9301 Landline Number After November 18, 2015

The final issue that we will address is whether the defendant was entitled to continue placing calls to plaintiff's 9301 Landline Number after it was ported to a cellular service on November 18, 2015. The TCPA prohibits persons from making calls without the prior express consent of the called party using an ATDS to "any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." 47 U.S.C. §

227(b)(1)(A)(iii). The parties agree that based on this statute, Allied did not need plaintiff's prior express consent to contact plaintiff on her 9301 Landline Number while it was indeed affiliated with a landline phone. They therefore agree that plaintiff's October 7, 2015, phone call to Synchrony Bank revoking consent did not affect Allied's ability to continue to call plaintiff's 9301 Landline Number—at least until November 18, 2015.

Plaintiff alleges that on November 18, 2015[9], she ported her 9301 Landline Number into a cellular service network. She argues that once her 9301 Landline Number was transported to a cellular service network, the defendant was no longer permitted to call her on this number because she revoked consent on cell phone calls on October 7, 2015.[10] In response, the defendant argues that plaintiff's October 7, 2015, revocation could not possibly apply to a number that, at the time, was associated with a landline but later ported to a cellular network. The defendant argues that once plaintiff ported her 9301 Landline Number to a cellular network, plaintiff needed to call Allied directly for an effective revocation.

_____

[9] Plaintiff alleges that she made the decision to port her telephone number sometime prior to the summer of 2015. She admits, however, that the number was not successfully ported until November 18, 2015. (Doc. 35, Pl.'s SOF ¶ 72).

[10] It appears as though the plaintiff, while not raising the argument directly, is arguing that the TCPA is a strict liability statute. Absent any basis in law for this argument, we decline to view it as such.

There is no dispute that after the number was ported in November, plaintiff did not attempt to revoke consent to be contacted.

We find that summary judgment is inappropriate at this stage. A review of the record reveals that the parties do not agree on material issues of fact in regard to this issue. A fact is material when it might affect the outcome of the suit under the governing law. International Raw Materials, 898 F.2d at 949. First and foremost, whether the plaintiff actually ported her 9301 Landline Number to a cellular network is pivotal. It appears as though the parties do not agree that this event occurred, and dispute the timing of it. It also appears as though, as in the section above, there are many questions that remain unanswered after a thorough review of the record. For example, how would the defendant possibly know that that the plaintiff's number was ported—and does that matter? Did Synchrony Bank, if it knew that plaintiff's number had been ported, have an obligation to tell Allied? These are questions that we find would be more appropriately answered by a factfinder after further factual developments. As such, will deny both the plaintiff and the defendant's motions for summary judgment.

**Conclusion**

Accordingly, both plaintiff and defendant's motions for summary judgment will be denied in part and granted in part. Summary judgment will be granted for

the plaintiff on issue of standing. Summary judgment will be granted for the plaintiff on the issue of whether Allied's aQrate system qualifies as an ATDS, and we will employ the use of offensive collateral estoppel to prevent this question from being relitigated. For the purposes of this case, aQrate will be considered an ATDS. We will deny both the plaintiff and the defendant's motions for summary judgment on the issues of whether the defendant had consent to call the plaintiff after her alleged October 7, 2015 revocation and whether the defendant was entitled to continue placing calls to the plaintiff's 9301 Landline Number after November 18, 2015. An appropriate order follows.

**Date: February 12, 2018**                              **s/ James M. Munley_____**
                                                         **JUDGE JAMES M. MUNLEY**
                                                         **United States District Court**